## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.: 23-CR-366 (ACR) |
| v. | 18 U.S.C § 111(a)(1) |
| BENJAMIN COHEN, | |
| Defendant. | |

### STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Benjamin Cohen, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday,

November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8. On January 6, 2021, beginning at approximately 2:28 p.m., numerous members of the mob pushed through barriers and attacked U.S. Capitol Police and Metropolitan Police Department officers who were lawfully engaged in the performance of their official duties defending the Capitol's West Plaza. Just before this time, Cohen—wearing a black jacket, a red hat, and blue jeans, and carrying a red "STAND WITH TRUMP" sign—was present near the front of the mob up against the West Plaza police line.

9. Just before approximately 2:29 p.m., Cohen joined rioters breaching the police line and moved toward a group of officers. Cohen then made physical contact with the group of police officers—pushing and shoving them with his hands. Moments later, Cohen moved toward police officers again and resumed shoving and striking them with his hands.

10. Later, beginning at approximately 2:42 p.m., members of the mob attacked U.S. Capitol Police and Metropolitan Police Department officers who were lawfully engaged in the performance of their official duties defending an entrance to the U.S. Capitol on the Lower West Terrace known as the "Tunnel." Over the course of more than two hours, members of the mob threw items at police, struck police with items, sprayed police with chemical irritants, pushed against the police, and stole items from the police defending the Tunnel.

11. At approximately 2:48 p.m., Cohen—who had progressed from the West Plaza up to the Inaugural Stage and Lower West Terrace—entered the Tunnel as rioters ahead of him were attacking police officers. He moved into the Tunnel mob and, at approximately 2:51 p.m., Cohen pushed against the rioter in front of him, joining the pushing effort of multiple other rioters around and behind him. Together, the mob pushed in a "heave-ho" effort against the police.

12. After joining the 2:51 "heave-ho" effort, Cohen moved back in the mob and returned to the Tunnel's entrance. Approximately one minute later, Cohen reversed course and moved back into the mob in the Tunnel. Cohen watched as rioters shined strobe lights at officers, threw objects at officers, and utilized other means to disrupt the police line. At one point, Cohen observed another rioter to Cohen's left deploy a chemical spray against the police.

13. Cohen moved further forward, toward the front of the mob, where rioters were directly engaged in physical altercations with the police officers. At approximately 2:56 p.m., a rush of additional rioters entered the Tunnel behind Cohen, and, at approximately 2:57 p.m., the mob—including Cohen—engaged in another "heave-ho" effort by moving their bodies in unison back and forth.

14. By approximately 3:05 p.m., Cohen moved back toward the Tunnel's entrance and rinsed his eyes with a bottle of water to wash chemical spray from his eyes. Cohen then exited the Tunnel. He remained with the mob on the Lower West Terrace and Inaugural Stage until at least approximately 4:01 p.m., where he continued to assist rioters' efforts to push back into the Tunnel.

15. At one point, Cohen entered a room in the Capitol through a broken window adjacent to the Tunnel's entrance.

16. By engaging in the above-described conduct, Cohen intended to commit an act to obstruct, impede, or interfere with law enforcement officers lawfully engaged in their official duties incident to and during the commission of a civil disorder.

## *Elements of the Offense*

17. The parties agree that Assaulting, Resisting, or Impeding Officers, in violation of 18 U.S.C. § 111(a)(1) requires the following elements:

   a. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with officers from the U.S. Capitol Police and Metropolitan Police Department.

   b. Second, the defendant did such acts forcibly.

   c. Third, the defendant did such acts voluntarily and intentionally.

   d. Fourth, the officer or officers who were assaulted resisted, opposed, impeded, intimidated, or interfered with were officers or employees of the United States who were then engaged in the performance of their official duties or assisting officers of the United States who were then engaged in the performance of their official duties.

e. Fifth, the offense involved physical contact with the victim or the intent to commit another felony.

*Defendant's Acknowledgments*

18. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he forcibly assaulted, resisted, opposed, intimidated, impeded, and interfered with members of the MPD (who were assisting officers of the United States) and USCP who were engaged in the performance of their official duties on the West Plaza of the Capitol at approximately 2:29 p.m. The defendant also admits that he did so with the intent to commit another felony, namely, a violation of the civil disorder statute, 18 U.S.C. § 231(a)(3), and that he made physical contact.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Nathaniel K. Whitesel*
NATHANIEL K. WHITESEL
Assistant United States Attorney
DC Bar No. 1601102
601 D Street NW
Washington, DC 20530
nathaniel.whitesel@usdoj.gov
(202) 252-7759

## DEFENDANT'S ACKNOWLEDGMENT

I, Benjamin Cohen, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 7\8\2024            _Ben Cohen_____
                          Benjamin Cohen
                          Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 7/8/24             _____
                          Tracy Hayes
                          Lillian Odongo
                          Attorneys for Defendant